**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MOHAN NIRALA, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:18-cv-03330-PX |
| A.J. DHALI, *et. al.*, | * | |
| Defendants. | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending before the Court in this legal malpractice suit is pro se Plaintiff Mohan Nirala's Motion for Leave to File a Second Amended Complaint (ECF No. 26), Defendants A.J. Dhali's and Edgar Ndjatou's Motion for Summary Judgment (ECF No. 31-2), Nirala's Motion for Summary Judgment (ECF No. 34), and Defendants' Motion to Strike Nirala's Motion for Summary Judgment (ECF No. 36). The motions are fully briefed and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the reasons stated below, Nirala's Motion to Amend is denied, Defendants' Motion to Strike is denied, Defendants' Motion for Summary Judgment is granted, and Nirala's Motion for Summary Judgment is denied.

**I.    Background**

**A.    The Underlying State Court Trial**

Defendants are attorneys who represented Nirala in a civil action arising from a business dispute. *See Ambedkar International Center, Inc., et al., v. Mohan Nirala,* Case No. CAE14-11689, Mont. Cty. Cir. Court ("state trial"). After a four-day bench trial, the Honorable Crystal D. Mittelstaedt ruled against Nirala, ECF No. 39-12 at 67–72, and later denied Nirala's two pro se motions to amend or alter the judgment. ECF No. 39-12 at 101–02. Nirala's subsequent appeal to the Maryland Court of Special Appeals was likewise denied. *Nirala v. Ambedkar*

...

*Internatinoal [sic] Ctr., Inc.*, No. 203, 2017 WL 2180630, at *2 (Md. Ct. Spec. App. May 18, 2017). The following facts established at the bench trial and relevant to the pending motions are as follows.

In 2008, Nirala founded Satyaguru Inc., a nonprofit corporation in Maryland, which was later renamed Ambedkar International Center (AIC). ECF Nos. 12 at 15; 39-12 at 34. AIC's first board of directors, established in 2012, were Nirala and Muni Subramani, Sita Ram Mahey, and Vijay Kumar ("Shankar"). ECF Nos. 39-1 at 18; 33-28. On November 17, 2012, four other individuals, Kranthi Tappita, Rakesh Gupt, Rama Krishna Bhupathi, and Sandeep Chavan each signed a Memorandum of Understanding ("MOU") with AIC. ECF No. 39-12 at 294–96. The MOU specified that each signor who met certain contractual obligations would be added as a director on the Board. *Id.* Each signor contributed $2,500 to AIC and thereafter participated in Board meetings. *Nirala*, 2017 WL 2180630, at *2.

In July 2013, a dispute arose about who had the power to act as "directors" of the AIC Board, as well as about Nirala's management of AIC funds and real property. *Id.*; ECF No. 39-13 at 6–7. At an October 12, 2013 meeting, the Board voted to remove Nirala as AIC President, but Nirala refused to relinquish his position. *Nirala*, 2017 WL 2180630, at *2.

AIC and board directors Tappita, Gupt, Bhupathi, Mahey, Chavan, and Shankar (collectively "AIC plaintiffs") subsequently filed the state court suit, bringing several common law claims, including conversion, quiet title, ejectment, declaratory judgment, constructive trust, breach of contract, unjust enrichment, accounting, injunctive relief, and constructive fraud. ECF No. 39-12 at 17–28. The AIC plaintiffs principally alleged that Nirala had been "acting as a rogue *alter ego* of AIC," "mismanaged AIC funds," and unlawfully "transferred AIC property to himself." *Nirala*, 2017 WL 2180630, at *1–2; ECF No. 39-12 at 17–28. Nirala retained

2

Defendants to represent him in this suit. ECF Nos. 39-12 at 12; 19 ¶ 3. Defendants filed counterclaims for civil conspiracy to defraud, unfair or deceptive trade practices, defamation, and injunctive relief. ECF No. 39-3. They also represented Nirala up to and including trial. ECF Nos. 19 ¶ 3; 39-12 at 12.

At trial, AIC plaintiffs presented evidence that Nirala continued to hold himself out as the Board President without authority, that he used his position to expend AIC's funds without the knowledge or approval of the Board, and that he unlawfully transferred AIC property to his own name. *Nirala*, 2017 WL 2180630, at *2; ECF Nos. 33-12–33-25 (trial transcripts). Nirala mounted a robust defense, aimed at demonstrating that he managed AIC funds properly, that his signature on the MOU was fraudulently obtained, and that because AIC plaintiffs were never properly elected to the Board of Directors, they lacked authority to remove him. *Id.* The Circuit Court also considered evidence regarding the purchase and management of real property belonging to AIC. *See, e.g.*, ECF Nos. 33-23 at 4–16; 39-3 at 7–8. Nirala asserted, for instance, that he contributed personally to the purchase of the property through a $25,000 donation and a $80,000 loan to AIC, the latter for which he offered his house as collateral. *Id*. Nirala also argued that he paid taxes, utilities, and maintenance for the land. *Id.*

The Circuit Court found in favor of the AIC plaintiffs in all respects. ECF Nos. 33-24; 33-25; 39-12 at 66–72. More particularly, the trial court declared that the AIC plaintiffs comprised the lawful Board of Directors and found that Nirala had breached the MOU and was properly removed as President in October 2013. ECF No. 39-12 at 69–71. Accordingly, the court ordered Nirala to perform an accounting of all monies transferred from AIC to any account he held personally. As for injunctive relief, the court prohibited Nirala from competing with or improperly associating his name with AIC. *Id.* at 70–71. Finally, the court granted Nirala's

ejectment from the property and issued a quiet title order making clear that Nirala was divested of all right, title and interest in it. *Id.* at 67–68.

As for Nirala's counterclaims, the parties ultimately withdrew the defamation claim in exchange for the AIC plaintiffs withdrawing their punitive damages request. *Id.* at 72; ECF No. 33-25 at 25. The trial court found for the AIC plaintiffs as to the remaining counterclaims. ECF Nos. 33-24 at 53; 39-12 at 72.

After suffering this loss at trial, Nirala retained separate counsel, Mark Chalpin, to represent him on appeal. The Court of Special Appeals of Maryland ultimately affirmed the judgment. *Nirala*, 2017 WL 2180630, at *1. Nirala then sued Chalpin for legal malpractice. ECF Nos. 39-11; 39-2. The case against Chalpin remains open. *Id.*

**B.     This Action**

On September 11, 2018, Nirala, proceeding pro se, initiated this malpractice action in the Circuit Court for Prince George's County, Maryland. ECF No. 1-1. On October 27, 2018, Defendants removed the case, invoking this Court's diversity jurisdiction. ECF No. 1. Nirala then amended the Complaint on December 4, 2018, ECF No. 12, and Defendants moved to dismiss the Amended Complaint on December 17, 2018, ECF No. 13. This Court granted partial relief on the motion, allowing the legal malpractice (Count I) and negligence claims (Count II) to proceed. ECF No. 17.

On October 15, 2019, Nirala moved once again to amend the Complaint. ECF No. 26. Defendants moved for summary judgment on February 3, 2020, ECF No. 31, and Nirala filed a cross motion for summary judgment on February 26, 2020. ECF No. 34. On March 12, 2020, Defendants moved to strike Nirala's motion for summary judgment. ECF No. 36. The Court addresses each motion below.

## II. Nirala's Motion to Amend Complaint

The Court must first decide whether the First Amended Complaint, ECF No. 12, or Nirala's proposed Second Amended Complaint, ECF No. 26-1, is the operative Complaint. The proposed Second Amended Complaint does not include any accompanying motion setting forth grounds for amendment. It also incorporates all allegations included in the First Amended Complaint and realleges the Declaratory Judgment count already dismissed by this Court. *Id.* at 1, 8–12; *see also* ECF No. 17. Nirala similarly resurrects his request for court-appointed counsel, also previously denied. *Id.* The proposed Second Amended Complaint was untimely, filed several weeks after the agreed-upon deadline for amendment of pleadings. *See* ECF No. 20.

Courts should freely grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15. The motion may be denied, however, when allowing amendment would "be prejudicial to the opposing party, when the moving party has acted in bad faith or with a dilatory motive, or when the amendment would be futile." *Arora v. James*, 689 F. App'x 190, 190 (4th Cir. 2017) (internal quotation marks omitted) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)).

The Court denies Nirala's motion to amend principally because the amendments are futile. The proposed Second Amended Complaint effectively adds dismissed claims which the Court sees no basis to resurrect. Otherwise, the proposed Second Amended Complaint simply summarizes the operative claims but adds nothing of substance. These summaries, devoid of any new facts, are "frivolous" and thus futile. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510

(4th Cir. 1986).[1]  Therefore, Nirala's motion to amend his complaint, ECF No. 26, is denied. The First Amended Complaint remains operative.

### III. Motion to Strike

The Court next turns to Defendants' motion to strike Nirala's motion for summary judgment on the grounds that it is untimely, duplicative of his response to Defendants' summary judgment motion, and dependent on record evidence not previously disclosed during discovery. ECF No. 36 at 1.

To be sure, Nirala's motion is untimely and, in many respects, out of compliance with the rules.  *Compare* ECF No. 20 *with* ECF No. 34.  But Nirala proceeds pro se and appears genuinely confused about the proper procedure as reflected in his response to Defendants' motion to strike.  ECF No. 37.  Because the Court must always endeavor to construe pro se pleadings liberally, as well as to prioritize substance over form, it denies the motion.  *See Fireman's Ins. Co. of Newark, New Jersey v. Herbert*, No. 4:04CV139, 2005 WL 3536091, at *2 (E.D. Va. Dec. 20, 2005) (Courts "do[] not expect a *pro se* litigant to perfectly comply with all procedural rules.").

As to Defendants' contention that Nirala submitted record evidence not otherwise disclosed in discovery, the Court is unpersuaded.  Defendants do not support this accusation.  *See* ECF No. 36.  Further, Nirala's summary judgment motion and response to Defendants' motion are largely identical.  *Compare* ECF No. 33-1 *with* ECF No. 34.  Construing the pleadings most generously to Nirala, and as discussed below, he provides no real grounds to grant summary judgment in his favor, and instead attempts to reframe his response in opposition as an

---

[1] Nirala's second request to the Court to appoint counsel is likewise futile.  As the Court explained in its prior opinion, Nirala does not demonstrate exceptional circumstances warranting appointment.  *See* ECF No. 17 at 13; *Cf. Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982).

affirmative motion. That said, out of an abundance of caution, the Court denies Defendants' motion and considers all arguments and evidence collectively raised in both the formal response, ECF No. 31, and Nirala's affirmative motion, ECF No. 34.

## IV. Summary Judgment

### A. Standard of Review

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In responding to a proper motion for summary judgment," the opposing party "must present evidence of specific facts from which the finder of fact could reasonably find for him or her." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004), *aff'd sub nom. Venugopal v. Shire Labs., Inc.*, 134 F. App'x 627 (4th Cir. 2005) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Celotex*, 477 U.S. at 322–23)). Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Where a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court credits the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"Where, as here, cross motions for summary judgment are filed, a court must 'evaluate each party's motion on its own merits, taking care [in each instance] to draw all reasonable inferences against the party whose motion is under consideration.'" *Snyder ex rel. Snyder v. Montgomery Cty. Pub. Sch.*, No. DKC 2008-1757, 2009 WL 3246579, at *5 (D. Md. Sept. 29, 2009) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)). And, although a pro se party is "given some latitude," he may not avoid summary judgment by "relying on bald assertions and speculative arguments." *Mansfield v. Kerry*, No. DKC 15-3693, 2016 WL 7383873, at *2 (D. Md. Dec. 21, 2016) (citing *Smith v. Vilsack*, 832 F. Supp. 2d 573, 580 (D. Md. 2011)).

**B.     Estoppel**

The Court first addresses Defendants' estoppel arguments. Defendants maintain that pursuant to the doctrine of collateral estoppel, Nirala's prior state case with AIC plaintiffs bars this suit. ECF No. 31-2 at 12. It is well-settled that "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Cosby v. Dep't of Human Res.*, 425 Md. 629, 639 (2012). But Nirala does not seek to relitigate the merits of the underlying case. He instead pursues a malpractice action that, at its core, concerns the competency of his defense counsel in the prior case. Certainly, the attorneys' professional performance was not before the trial or appellate courts. Summary judgment is thus denied on this ground.

Defendants also argue that judicial estoppel bars Nirala's suit because Nirala has lodged a "virtually identical complaint" against attorney Chalpin in a separate malpractice action. ECF No. 31-2 at 13. Judicial estoppel "precludes a party from taking a position in a subsequent action

inconsistent with a position taken by him or her in a previous action." *Dashiell v. Meeks*, 396 Md. 149, 170 (2006) (citations omitted).  The doctrine requires, first, that the party sought to be estopped is taking a factual position inconsistent with its position in previous litigation; second, the previous inconsistent position was accepted by a court; and third, the party maintaining the inconsistent positions must have intentionally misled the court in order to gain an unfair advantage.  *See Lowery v. Stovall*, 92 F.3d 219, 223–24 (4th Cir. 1996); *Meeks*, 396 Md. at 171.

Again, Defendants' argument is unavailing.  Nirala is simply not taking inconsistent positions when he asserts before this Court that *trial* counsel committed malpractice, and before another court that *appellate* counsel suffered from his own set of infirmities.  *See* ECF Nos. 12; 39-11.  Second, the case against Chalpin has not resolved and so no formal findings have been made.  *See Mohan Nirala v. Mark G. Chalpin, Esquire,* Case No. C-02-CV-19-002151 (Md. Cir. Ct., A.A. Cty.).  And third, this Court is entirely unconvinced that Nirala intentionally misled this Court so as to gain unfair advantage.  The motion for summary judgment is denied on this ground as well.

### C.   Sufficiency of the Legal Malpractice Claims

As previously discussed in connection with Defendants' motion to dismiss, ECF No. 17, Nirala's professional malpractice and negligence claims are legally identical.  *Compare Flaherty v. Weinberg*, 303 Md. 116, 128 (1985) *with Thomas v. Bethea*, 351 Md. 513, 528–29 (1998). The Court, therefore, considers the claims together.

To sustain a legal malpractice claim sounding in negligence, Nirala must put forward sufficient facts to demonstrate that in connection with their representation, Defendants failed to exercise a "'degree of reasonable care and skill expected of lawyers acting under similar circumstances,'" and that Nirala was injured as a result.  *Seed Co. Ltd. v. Westerman*, 832 F.3d

325, 335 (D.C. Cir. 2016) (quoting *Morrison v. MacNamara*, 407 A.2d 555, 561 (D.C. 1979)). *See also Bethea*, 351 Md. at 528–29. The applicable standard of care and any alleged breach usually involves expert testimony. *See Hickey v. Scott*, 796 F. Supp. 2d 1, 3 (D.D.C. 2011); *Chase v. Gilbert*, 499 A.2d 1203, 1211 (D.C. 1985) ("Expert testimony must be presented to establish the standard care unless the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge.") (internal citation and quotation marks omitted).

Nirala contends that Defendants' performance fell below the applicable standard of care as to three aspects of the state case. First, Nirala argues that Defendants agreed to dismiss the defamation counterclaim without Nirala's consent and authorization. ECF Nos. 12 at 2; 33-1. Second, Nirala contends that Defendants failed to preserve in the counterclaims any theory of relief that would permit the Circuit Court to account for Nirala's $80,000 loan to AIC. *Id.* Third, Nirala challenges more broadly Defendants' trial strategy with regard to admission of relevant documentary evidence and witness testimony.[2] *Id.* The Court addresses each in turn.

### 1. Settlement of the Defamation Counterclaim

At the end of AIC plaintiffs' affirmative case, but before the Court turned to Nirala's counterclaim, the parties conferred and counsel for AIC plaintiffs told the Court that the parties had reached a settlement wherein Nirala's defamation counterclaim and AIC plaintiffs' request for punitive damages would both be withdrawn. ECF No. 33-25 at 25. Nirala asserts now that this settlement was reached without his consent and authorization. ECF No. 33-1 at 11, 19, 25. Viewing the record evidence most favorably to Nirala, his contention is based solely on his after-

---

[2] Nirala also claims his attorneys abandoned him after the trial and forced him to file the motions to alter or amend the judgment pro se. ECF No. 33-1 ¶ 40. The Court, however, cannot find any evidence in the record to support Nirala's abandonment allegation.

10

the fact averments in pleadings, without any support in the record. Nirala admits that when the settlement was announced in open court, he was present and sat mum. He now characterizes his silence not as the obvious—assent—but as "silent protest[]." *See* ECF No. 39-1 at 32–33. This argument is nonsensical and belied by the record. Nirala never registered his objection with the Court at any time, including in his *two* pro se motions to amend or alter judgment, or in his appeal. *See* ECF Nos. 39-12 at 55–65, 74–93; 39-13. Accordingly, no record evidence supports his claim of unauthorized settlement.

Rather, the record evidence, supported by expert review, reflects that the settlement was reached by mutual consent and that it conferred a benefit to Nirala. The risk of a punitive damages award against Nirala was real. The trial court had just ruled in AIC plaintiffs' favor on all other counts, and so the settlement avoided the risk of a punitive damages award in exchange for giving up his counterclaim. ECF Nos. 31-2 at 2, 6, 12; 39-17. On this record, no reasonable trier of fact could conclude that Defendants' representation fell below the standard of care when they reached this settlement.

Alternatively, even if Nirala could somehow put forward evidence as to his lack of consent, he cannot prove he was injured. In a legal malpractice case, the plaintiff-client must demonstrate that but for the alleged malpractice, he would have succeeded in his lawsuit. *See Al Jazeera Int'l v. Dow Lohnes PLLC*, No. DKC 13-2769, 2014 WL 4373464, at *3 (D. Md. Sept. 2, 2014). Nothing in the record demonstrates that Nirala would have prevailed on the defamation claim. Thus, forsaking the claim, even if proven illegitimate, does not alter the outcome. Summary judgment in Defendants' favor on this theory of malpractice is proper.

### 2. Failure to Preserve Accounting of Nirala's $80,000 Loan

Nirala's alternative theory of malpractice liability concerns Defendants' supposed failure to state a cause of action in the counterclaims that would permit the trial court to account for Nirala's $80,000 loan to AIC as an offset to damages. Defendants do not meaningfully respond to this theory. *See* ECF No. 31-2 at 2. That said, the claim nonetheless fails for several reasons.

Most pointedly, the record clearly reflects that the counterclaim indeed pleaded Nirala's $80,000 loan to AIC in connection with the purchase of real property. The counterclaim avers that Nirala took out a loan for $80,000 from Navy Federal Credit Union, offering his primary residence as collateral, and personally paid $802 per month on the loan. ECF No. 39-12 at 36–37. Nirala also testified about the $80,000 loan, and Defendants submitted other evidence to corroborate his testimony. *See* ECF Nos. 33-23 at 9–12, 15; 39-12 at 110 ("[Nirala] put [ ] 80,000 dollars of his money into the land. When he purchased the land, he placed it under AIC's name."). Thus, Nirala cannot demonstrate as a matter of fact that Defendants neglected to raise the loan in the counterclaim.

In response, Nirala refers to the trial court's lengthy admonishment of Defendants in which Judge Mittelstaedt challenged whether she could offset any damages award by $80,000 because Nirala failed to plead entitlement to offset in the counterclaims. ECF No. 33-25 at 26–36. Defendant Dhali pushed back, arguing to the trial court that Nirala preserved in his prayer for relief for "all judicial and equitable relief entitled to law," and that the court, sitting in equity, may and should still take the loan into account when calculating damages. *Id.* at 25. Dhali further pointed out that the counterclaim certainly set forth the facts and trial established the same. *Id.* at 29. Alternatively, argued Dhali, the Court still must consider offsetting any damages award by $80,000 so as to not grant plaintiffs a windfall. *Id.* at 26, 34. The trial court

ultimately disagreed.  *Id.* at 30, 32, 34 ("Because you did not plead it, I can't grant it.  It's not pled in your counterclaim. You can't ask me after the trial is over to grant you relief for a claim that's not pled.).

When reviewing the record most favorably to Nirala, no reasonable trier of fact could find that Defendants' omission of "offset" as a counterclaim fell so below the standard of care to support a malpractice claim.  Dhali's windfall argument is supported in the law.  *See, e.g.*, *Exxon Mobil Corp. v. Albright*, 433 Md. 303, 414, *on reconsideration in part*, 433 Md. 502 (2013). Further, the general prayer for relief was adequate, as the counterclaim allegations put AIC plaintiffs and the trial court on notice of Nirala's intent to request an offset.  *Cf. Boucher v. Shomber*, 65 Md. App. 470, 478 (1985); *see also Terry v. Terry*, 50 Md. App. 53, 60 (1981) ("Use of a general prayer for relief has a long tradition in equity pleading and practice[,]" provided that the relief awarded is warranted by the allegations); *Falise v. Falise*, 63 Md. App. 574, 582 (1985) (noting that a prayer for "such other and further relief" "was sufficient to permit the trial judge to render any necessary equitable adjustments *vis-à-vis* a monetary award.").

That the trial court did not agree with Defendants, without more, does not support a legal malpractice claim. *See generally Feroleto v. O'Connor*, No. 1:08-CV-554 GLS RFT, 2011 WL 1770267, at *4 (N.D.N.Y. May 6, 2011) (noting that choosing one among several reasonable courses of action does not constitute malpractice); *see also Wolfson v. Bruno*, 844 F. Supp. 2d 348, 356 (S.D.N.Y. 2011) (same); *Hatfield v. Herz*, 109 F. Supp. 2d 174, 183 (S.D.N.Y. 2000) (noting that reasonable minds might differ as to the optimal strategy for trial).  Indeed, lawyers at trial lose all the time, only to be vindicated on appeal (or not).  Loss is indeed part and parcel of the adversarial legal system.  The critical inquiry for this Court, however, is whether Nirala has adduced evidence that Defendants' performance fell below the applicable standard of care in

failing to plead specific offset as a counterclaim. Viewing the record most favorably to Nirala, the Court finds no such evidence. Summary judgment is granted on this theory as well.

### 3. Withholding of Key Evidence

Nirala's final theory of liability concerns Defendants' supposed failure to introduce at trial critical documents and to call two key witnesses, Buddha Mahajan and Pavin Tamrakar. ECF No. 33-1 at 2; ECF No. 34-1 at 21–22. As to the litany of challenged documents, the trial record amply reflects otherwise. *Compare* ECF No. 33-1 ¶¶ 1, 4 (Nirala arguing that deposition testimony by AIC plaintiffs was not properly before the trial court) *with* ECF Nos. 39-1 at 7; 39-2 at 26; *compare* ECF No. 33-1 ¶¶ 3, 15, 19 (arguing that evidence of the $80,000 loan and accounting of the AIC land purchase was not before the court) *with* ECF Nos. 33-23 at 6–20, 33-25 at 25–45; 33-18 at 22–24, 62–63 (record evidence of $80,000 loan and land purchase accounting); *compare* ECF No. 33-1 ¶¶ 13, 17, 22 (arguing absence of AIC's financial accounting from evidence presented at trial) *with* ECF Nos. 33-17 at 1–4; 33-21 at 13–16; 33-23 at 18–23 (exhaustive examinations of financial accounting at trial) *and* ECF Nos. 39-1 at 16–17, 20; 39-12 at 70; 12 at 6 (demonstrating court's consideration of such evidence); *compare* ECF No. 33-1 ¶¶ 5, 6, 11, 12, 24 (arguing absence of Articles of Incorporation, election documents, tax filings, and other documents regarding composition of the AIC Board from trial record) *with* ECF Nos. 33-16 at 16–21, 41–45, 79, 88; 33-17 at 3–18; 39-1 at 77; 39-15 at 2 (trial record proving otherwise); *compare* ECF No. 33-1 ¶ 30 (arguing that Defendants failed to discuss Nirala's allegedly forged signature on the MOU) *with* ECF Nos. 33-16 at 28–39, 84–88; 33-20 at 9–11; 33-22 at 30–44 (record evidence related to Nirala's forged signatures).[3] Nirala even

---

[3] Nirala recites a litany of additional documents which he claims, wrongly, were not introduced at trial. Evidence includes the 2014 election document, *compare* ECF No. 33-1 ¶ 20 *with* ECF No. 39-1 at 18, termination of Nirala as President, *compare* ECF No. 33-1 ¶¶ 16, 26, 28 *with* ECF Nos. 33-15 at 8–9; 33-21 at 16–20; 33-22 at 65–66, "threating" emails by AIC plaintiffs regarding the nomination of Laxmi Berwa and Sakya Mohan, *compare* ECF

concedes in his deposition that many of the documents in question were admitted at trial, *see* ECF No 39-1, and a list of exhibits before the trial court further confirms as much, *see* ECF No. 39-15 at 6.  Nirala's contention in this respect is baseless.

As to the two "key" witnesses, Buddha Maharjan and Pravin Tamrakar, nothing in the record supports that calling either witness would have materially altered the outcome of trial. ECF No. 33-1 at 33.  At best, the record reflects that the testimony would have been cumulative in that the witnesses would have confirmed AIC's programming and their support of Nirala as President.  ECF No. 33-21 at 51–53.  Thus, this theory of liability also fails as a matter of law.

In sum, Nirala has failed to put forth any credible evidence that Defendants committed legal malpractice.  The Court, therefore, grants summary judgment in favor of Defendants as to the malpractice and negligence claims.

### D.     Gross Negligence

Likewise, the gross negligence count is easily disposed.  Gross negligence depends on a finding of ordinary negligence in the first instance.  *See Cooper v. Rodriguez*, 443 Md. 680, 708 (2015); *Stracke v. Estate of Butler*, 465 Md. 407, 421 (2019); *State v. Thomas*, 464 Md. 133, 153 (2019).  Put plainly, it is a claim of degree which requires the finder of fact to determine whether defendant committed negligence in a manner so wanton and willful or with such utter indifference.  *Cooper*, 443 Md. at 708 (quoting *Barbre*, 402 Md. at 187).  The Court's summary judgment determination in Defendants' favor on a claim of ordinary negligence thus precludes as a matter of law any gross negligence finding.

---

No. 33-1 ¶¶ 23, 25 *with* ECF Nos. 39-1 at 21; 33-20 at 26–31; 33-16 at 42–45; 33-18 at 29, removal of Shankar from the Board, *compare* ECF No. 33-1 ¶ 29 *with* ECF Nos. 33-20 at 20–23, 65–68; 33-21 at 1–9; 33-22 at 48- 57, and the nominations and approval of Bhupathi, Gupt, Chavan, and Tappita to the board, *compare* ECF No. 33-1 ¶ 25 *with* ECF Nos. 33-15 at 81–82; 33-16  at 1–5, 15–17; 33-21 at 22–23.

## V.     Conclusion

For the foregoing reasons, Nirala's Motion to Amend is DENIED, Defendants' Motion to Strike is DENIED, Defendants' Motion for Summary Judgment is GRANTED, and Nirala's Motion for Summary Judgment is DENIED.  A separate order follows.


|             4/21/2020             |                  /S/                  |
| Date | Paula Xinis |
|      | United States District Judge |